G. FILE No:

459



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Hon. I. Predecki
County Auditor
Galveston County
Galveston, Texas

Dear Sir:

Opinion No. O-6700
Re: Expenditure of county
park funds for the pur-
pose of constructing
stock pavilions, etc.,
in county park

We are in receipt of your letter of recent date re-
questing the opinion of this department on the above stated
matter. We quote from your letter as follows:

"The County Commissioners' Court made provision
in the budget for the year 1945 for structures to be
built in a new park in the vicinity of the town of
Arcadia, Galveston County. It is my understanding
that the structures will consist of a stock pavilion
and stock sheds, the purpose being to display cattle
and use these facilities for this purpose. The War
Production Board has issued, on their form CA-1456,
authorization for the construction and the cost of
same is stipulated to be $45,000.00.

"The County established, near the town of League
City, a county park about sixteen years ago, and con-
structed an auditorium and other buildings, which has
been used by many of the residents of the county since
that time.

"Your opinion is requested as to the authority
of the Commissioners' Court to enter into contract for
the construction of buildings for the purpose that the
WPB authorized on the application that was submitted
to them."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Also, in your letter supplementing the information above given, you state:

"The land that the County now owns at Arcadia and on which structures are to be built, is intended at this time to be paid for out of the revenues now in the County Park Fund for this purpose, in the total amount of $31,250.00. The County did not intend to issue bonds or time warrants for these buildings. A tax levy of .04¢ collected during the tax period of 1944-1945, is now in this fund.

"When the first County Park was established at League City, an election was held and the Commissioners' Court was authorized to levy the .05¢ on the $100.00 valuation provided for in the County Park law.

"As the amount authorized to be expended by the War Production Board is stipulated to be $45,000.00, to the best of my knowledge, it is not intended to expend more than the first amount mentioned, which is now as stated, in the County Park Fund."

As we understand the situation, the sum of $31,250.00, representing revenues derived from taxes levied for county park purposes, was allocated in the 1945 county budget for the purpose of making improvements in the county park located near Arcadia in Galveston County. The Commissioners' Court is contemplating the construction of a stock pavilion, sheds, etc., in said park, said structures to be used for the purpose of displaying cattle, and although the War Production Board has authorized said construction at a cost of $45,000.00, the amount which the Commissioners' Court contemplates spending for this purpose, will not exceed $31,250.00. Your question is whether the Commissioners' Court is authorized to expend the above mentioned park funds to construct a stock pavilion, sheds, etc., in said county park for the purpose of exhibiting or displaying cattle.

Article 6078, Vernon's Annotated Civil Statutes, in

Hon. I. Predeski, page 3

part, provides:

> "Each Commissioners Court is authorized to levy
> and collect a tax not to exceed five (5) cents on
> each one hundred dollars assessed valuation of the
> county for the purchase and improvement of lands for
> use as county parks. No such tax shall be levied
> and collected until the proposition is submitted to
> and ratified by the property taxpaying voters of the
> county at a general or special election called for
> that purpose, provided, a two-thirds majority of the
> property taxpaying voters of such county, at an elec-
> tion held for such purpose shall determine in favor
> of said tax. If said court desires to establish two
> or more of such county parks, they shall locate them
> in widely separated portions of the county. Said court
> shall have full power and control over any and all
> such parks and may levy and collect an annual tax
> sufficient in their judgment to properly maintain such
> parks and build and construct pavilions and such other
> buildings as they may deem necessary, lay out and open
> driveways and walks, pave the same or any part there-
> of, set out trees and shrubbery, construct ditches,
> or lakes, and make such other improvements as they may
> deem proper. Such parks shall remain open for the
> free use of the public under such reasonable rules and
> regulations as said court may prescribe. . . ."

Under the above quoted provisions, commissioners' courts
are empowered to levy an annual tax sufficient in their judgment
to properly maintain county parks and build and construct pavil-
ions and such other buildings which they may deem necessary. Af-
ter considering all of the provisions of the foregoing article,
it is our opinion that it was contemplated by the Legislature
that the purposes and uses of the "pavilions and such other
buildings as they may deem necessary" should be consistent with
the purposes and uses of a "public park" as said term is ordi-
narily accepted and understood.

In the case of Sanborn v. City of Amarillo, 93 S. W.
473, 42 Tex. Civ. App. 115, the court, by way of discussing the
ordinary and accepted meaning of term "park", said:

"In this country the word 'Park' written upon
a block of land represented upon a map or plan of
a city or town is as significant of a dedication
to the public as the word 'Street' written on such
plan. The popular and natural meaning of the term
when so used is a place set apart for the enjoyment,
comfort, and recreation of the inhabitants of the
city or town in which it is located, and the sig-
nificance is unequivocal. . ."

In the case of King v. Sheppard, Tex. Civ. App. 157
S. W. (2d) 682 (error refused) the court in discussing the
ordinary signification of the term "park", said:

". . . . as used in modern and present times in
America the term 'park' usually signifies an open
or inclosed tract of land set apart for the recrea-
tion and enjoyment of the public; or, 'in the general
acceptance of the term, a public park is said to be
a tract of land, great or small, dedicated and main-
tained for the purposes of pleasure, exercise, amuse-
ment, or ornament; a place to which the public at
large may resort to for recreation, air, and light.'
Wiggins v. City of Fort Worth, Tex. Civ. App., 299
S. W. 468, 470, affirmed Tex. Com. App., 5 S. W.(2d)
761."

In view of the foregoing, it is our opinion that it was
contemplated by the Legislature that funds raised by taxation un-
der a special levy for "county park purposes" should be used pri-
marily for the purpose of providing facilities for the amusement,
recreation and enjoyment for the people of the county. Although
an exhibition or display of cattle may incidentally provide recrea-
tion and enjoyment, it is generally recognized that livestock ex-
hibits and displays are held primarily for the promotion, improve-
ment and betterment of the livestock raising business, rather than
for recreation or enjoyment. We therefore do not think that such
use of park funds is within the contemplation of the use of said
funds under the provisions of Article 6078, which authorizes the
commissioners court to provide county park facilities, when it is
ordinarily understood that park facilities are primarily, rather
than incidentally, for the purpose of providing amusement, recrea-
tion or enjoyment.

Hon. I. Predecki, page 5

Also, we call your attention to Article 2372d, V. A. C. S., which, in part, provides:

"Section 1.  All counties in the State acting by and through their respective Commissioners' Courts may provide for annual exhibts of horticultural and agricultural products, livestock and mineral products, and such other products as are of interest to the community.  In connection therewith, such counties may also establish and maintain museums, including the erection of the necessary buildings and other improvements, in their own counties or in any other county or city in the United States, where fairs or expositions are being held.

"Sec. 2.  The Commissioners' Courts of the respective counties or the Commissioners' Courts of several counties may cooperate with each other and participate with local interests in providing for the erection of such buildings and other improvements as may be necessary to accomplish the purpose mentioned in Section 1, of this Act and for the assembling, erecting, and maintaining of such horticultural and agricultural, livestock and mineral exhibits, and the expenses incident thereto..."

Thus, the Legislature has made a separate and specific provision authorizing the commissioners' court to provide for exhibits of the character mentioned in Article 2372d, including buildings for livestock exhibits. It is apparent that buildings of the character and for the purposes authorized under the provisions of Article 2372d are distinguishable from the pavilions and other buildings contemplated under the provisions of Article 6078.  It is our opinion that the only statutory authority for the commissioners' court to provide for the construction of a stock pavilion, sheds, etc., for the purpose of displaying or exhibiting cattle is found in Article 2372d, and that funds raised by a special levy of taxes for park purposes under the

Hon. I. Predecki, page 6

authority of Article 6078 should not be expended for the construction of a stock pavilion, sheds, etc., to be used primarily for the display or exhibition of cattle.

We trust that the foregoing satisfactorily answers your inquiry.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *J. A. Ellis*

J. A. Ellis
Assistant.

JAE:rt

APPROVED AUG 7 1945

FIRST ASSISTANT
ATTORNEY GENERAL

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE